IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THOMAS E. FITZWATER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 11-0461-CV-W-ODS ) |
| STEVEN BLOCH, et al, | ) ) |
| Defendants. | ) |

ORDER AND OPINION GRANTING IN PART AND DENYING AS MOOT IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is a Motion for Summary Judgment filed jointly by Defendants Christopher Bentch, Steven Bloch, Jennifer Chornister, James Fuller, Michael Lenoir, Gwen Merino, Brian Ruch, and Tamara Pronske. The motion is denied as moot as to Tamara Pronske because she was previously dismissed in an Order dated May 28, 2013. The motion is granted as to all other defendants.

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984),

cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Record reveals the following undisputed facts: On the evening of September 18, 2006 Plaintiff was driving his truck above the speed limit when he went through a red light, collided with another passenger vehicle, and continued through the intersection. Plaintiff's Dep. at 23-25; Defendants' Exhibit C. These events were observed by two police officers who were sitting in their patrol car. The officers – Defendant Steven Bloch and his partner, Jerry Grubb – activated their lights and siren and pursued Plaintiff. Defendants' Exhibit C. Thirty seconds into the pursuit Plaintiff brought his truck to a complete stop. Id. Bloch (who was driving) veered to the right of the truck to avoid hitting it, but when he did Plaintiff accelerated and rammed into the police car, pushing it across the lanes of traffic until it came to a rest against two pillars comprising part of a bank's drive-through. Id.; see also Defendants' Exhibits D and E. Plaintiff continued revving the truck's engine, thereby continuing to "crunch" the police car against the pillars. Defendants' Exhibit C.[1]

Grubb was trapped inside the police car; Bloch freed himself and approached the driver's side of Plaintiff's truck. Plaintiff put his hands out the window. The evidence is not clear as to whether (1) Bloch had his gun out or not, or (2) whether Bloch or a female officer removed Plaintiff from the truck, but these details are not relevant to the issues. It is uncontroverted that other officers responded to the scene and an officer removed Plaintiff from his truck. Plaintiff was taken to the ground and controlled; some

---

[1]Plaintiff testified that he did not remember anything that happened after he hit the passenger car; when his memory returned, his truck was stationary and pressed against the side of the police car. Plaintiff's Dep. at 27, 30-31. The four witnesses Plaintiff has identified did not see Plaintiff's truck strike the police car; their attention was drawn to the events after hearing the collision. Harris Dep. at 6; Ceasey Dep. at 3; Hampton Dep. at 5-6; Watkins Dep. at 14-15. Some of these witnesses speculated as to the particulars of the collision, but none of them had a personal basis of knowledge or other basis for these opinions.

2

officers grabbed his limbs and one female officer had her knee in his back. Plaintiff was handcuffed and eventually placed in either a police car or an ambulance.

The Record contains slight variations on the description of the officers' actions during the arrest, but none of them are particularly helpful to Plaintiff even when construed in his favor. Delena Harris testified Plaintiff was "slammed" against the truck before being taken to the ground and she characterized the officers' actions as "a little rough," but she did not see them strike or hit Plaintiff. Harris Dep. at 8-11. Yankuba Ceasay saw Plaintiff before he was handcuffed; Plaintiff was on the ground and the officers were "all over him" grabbing his legs and arms, and Ceasay heard Plaintiff scream for help because the officers were holding him. Ceasay Dep. at 4. Charisma Hampton testified she saw a female officer "push him on the ground. She put her knee on his back and sat on top of him." She also described Plaintiff's head being pushed into the ground and his nose bleeding. Hampton Dep. at 5. When asked if she saw "the police beat on the guy, the driver of the truck," Hampton only reiterated observing the officer push Plaintiff to the ground and sit on him with her knee in his back. Id. at 9. Dorrine Watkins described the events in non-specific terms, such as explaining that the officers "tore him up," Watkins Dep. at 7, 13, or that they were "roughing him up and stuff like that." Id. at 14. However, when asked to be specific, she testified she did not see the officers strike, beat, or kick Plaintiff. Id. at 11, 14.

For his part, Plaintiff testified he was pulled from his truck "rather roughly" by a female officer, who pushed him to the ground. Plaintiff's Dep. at 40-41. During the course of the arrest an officer had a knee in his back and other officers kicked him, id. at 50, but Plaintiff did not testify that any officers turned him on his back and put his or her foot on his throat. Plaintiff described being picked up and "dropped" from a height of two to three feet; he could not specify how much this happened and could only say it happened "quite a few" times. Id. at 46, 49, 52. He also said that the officers were "beating" him. Id. at 52. When asked to specify what he meant by "beating" and whether this was something different from what he had already described, Plaintiff said "I just don't know. I mean there were just several officers on me, just . . . . I can't say for sure that they punched me per – I can't say if they hit me with a baton or not. They

3

were just beating on me." Id. The entire arrest lasted two to five minutes. Plaintiff's Dep. at 53.

Following the arrest,[2] Plaintiff was transported to Truman Medical Center. Defendants' Exhibit A. However, Plaintiff has not supplied any of those records. Plaintiff also sought medical treatment for his hand and back while at the Missouri Department of Corrections ("MDOC"). Those records also have not been submitted; in fact, Plaintiff testified that he doesn't have any medical records at all. Plaintiff's Dep. at 64. Regardless, Plaintiff testified he saw a doctor as many as three times and was given ibuprofen and a chiropractic adjustment. Id. at 63-64. He also testified that his hand will not close properly, id. at 66, but he has not sought or obtained treatment.

Defendants contend they are entitled to summary judgment because only a de minimus degree of force was utilized. They also contend they are entitled to qualified immunity because at the time of the arrest then-existing Eighth Circuit law would not have enabled a reasonable officer to know that causing de minimus injury could constitute a violation of the Eighth Amendment. Finally, some of the Defendants contend they were not involved in the arrest. Plaintiff does not really respond to Defendant's arguments; he merely presents the depositions of the four eyewitnesses and insists he was assaulted. The Court agrees Defendants are entitled to qualified immunity, and on that basis grants their motion.

"To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). "The distinction between *de minimis* force and *de minimis* injury, however, was not clear until *Chambers* was decided. In September 2006 . . . 'a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not

---

[2]Plaintiff plead guilty to two counts of assault, one count of resisting arrest, and one count of possession of controlled substance (the latter charged based on cocaine found in his pocket when he was arrested).

4

run afoul of the Fourth Amendment.'" LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013) (quoting Chambers, 641 F.3d at 908).

Here, the uncontroverted facts demonstrate any injuries Plaintiff suffered were de minimus. There is no doubt of the justification to arrest Plaintiff, nor is there much doubt the officers were entitled to consider Plaintiff a threat to the safety of themselves and the public at large. What Plaintiff describes in terms of injury – the expected results of being grabbed, forced to the ground, having a knee placed in his back – qualify as de minimus. This conclusion is augmented by the relatively minor treatment needed to treat those injuries. Finally, Plaintiff does not present any medical records to counter these conclusions.[3]

A reasonable officer in September 2006 would not have known that force causing de minimus injuries could be the basis for an excessive force claim. Accordingly, Defendants are entitled to qualified immunity. The Court grants summary judgment to Defendants Christopher Bentch, Steven Bloch, Jennifer Chornister, James Fuller, Michael Lenoir, Gwen Merino, and Brian Ruch.
IT IS SO ORDERED.

DATE: December 11, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[3] In fact, Plaintiff's failure to present medical records presents another difficulty for him: he cannot substantiate his contention that any injuries he suffered were caused by Defendants and were not caused by his collision with two motor vehicles.